Haywood, J.
delivered the opinion of the Court.
Action against her as an innkeeper for the loss of a horse put into her care as such, and another count in assumpsit for the value of the horse ; pleaded not guilty to the first count, and non assumpsit to the latter. The jury find the issue for the plaintiff. Appeal in the nature of a writ of error from the Circuit Court of Marion County to this Court; errors assigned, misjoinder in action and that the Court ought to have granted a new trial.
The Court will now proceed to examine the case upon the evi *120 dence offered in the record, which shows that the cause of action arose within the limits of the Cherokee territory. The evidence is that, in 1815, plaintiff came to the house of the defendant, put up as a guest at her house, and that in the morning his horse, which he had put in her care, could not be found. Plaintiff proved further that in 1819 she lived with her mother at a place called Lowry’s place, which was reserved to Lowry by the treaty of 1817, and there acted as assistant housekeeper. The object of the plaintiff was to show that this was the place or public-house at which his horse was lost. The treaty of 1817 shows that this place, being reserved by that treaty for Lowry in 1817, was in the Cherokee country up to that time.
Before coming to the principal point I would briefly remark that if in 1815 this place, at which she lived in 1819, was not the place of her residence, but some other, then there is no proof that this other was kept by her as a public-house, and then this action, which is founded upon that supposition, wholly fails. If the place where she lived in 1819 was the same .place at which she lived in 1815, that, we are informed by a public treaty which is the supreme law of the nation, was in the Cherokee territory. And then the main question is, whether the cause of action arising there be governable by the law of the Cherokee nation, or by the law of Tennessee; for if by the former, then the action should have been maintained upon evidence showing what that law is that makes her a public' innkeeper, or how far such innkeeper is liable to the plaintiff for a horse lost under the circumstances above stated.
The Cherokees, though living within the limits of Tennessee, and upon lands the dominion of which belongs to this State, and having themselves only the usufruct thereof, are yet an independent nation, subject to laws, both civil and criminal, made by themselves for the regulation of their internal affairs and exterior relations; as an independent nation war is declared, peace made, and treaties entered into with the United States, and sometimes with other nations, under the authority of their own great council ; though, by the international law which the United States and the European nations who have had possessions in America have acknowledged, it has been latterly understood, and sometimes openly avowed, that it is unfriendly and to be complained of as disrespectful for any of those nations to make treaties with tribes living within the limits of its neighbors.
By these Indians, war, when lawfully declared, is conducted according to the forms and usages which themselves have established, and when made captives, they are treated as prisoners of war, and not ás offenders against the laws of this State or of the United States.
If, under those laws, an Indian be put to death on the Indian territory by another, under circumstances which, by the laws of this State, would make such homicide to be murder, the slayer is not punishable by the law *121 of this State, though the fact were perpetrated within its limits, for he has acted agreeably to the law of his nation, and is in all other countries as much justified as he is by the law of his own nation.
In a late instance one of the Six Nations and a chief of the nation was indicted in a court of the State which included their territory, for inflicting the punishment of death upon an Indian belonging to his nation, for an of-fence not thus punishable by the law of the State, and he was discharged from the indictment, being not amenable to the law of the State for his conduct.
The law of retaliation is in the Cherokee nation in full force as much as it formerly was amongst the northern nations of Europe, who assigned by law to the relations of the deceased the right to revenge his death, or to commute it for a sum to be paid in lieu of its exercise, and as the laws of England, even to this day, give to the widow or heir the right to appeal the slayer of the death of her husband or ancestor.
If war be declared by the Cherokee nation, and one of them kill one of the people against whom the war is declared, he is not therefore subject to he punished as a criminal, because he is acting under the authority and laws of his nation. He cannot, by carrying on war against us, be treated as a traitor or rebel, and he is only then subject to our law when he comes within the limits of the State, and beyond the territories of his own nation. There he is bound to its observance upon the same principles and in the same degree as a Frenchman coming into the country would be. He impliedly undertakes, because of the protection that is given him, to be obedient to the laws which afford it, and like a Frenchman in his own country, whatever cause of complaint begins there though sued for the same in the courts of this State or of England, his liability is measured by the law of his own country which has been made for the internal regulation of their own affairs. A Frenchman living in France whilst claimed by England as subject to its sovereignty was always admitted by the English law to be liable for transactions in France according to the French laws, though sued for in an English court. Should an action, for instance, be commenced in an English court for the culpable neglect or omission -of duty by a French innkeeper in his own country, the declaration could not allege the law of England as the standard of his right, but only as the means of enforcing it. And the plaintiff could only resort to the law of the French to determine the liability of the defendant, the legality of his own claim, and the extent of the retribution to which he was legally entitled. Just so was it in all respects with any other and all other independent nations, and of the Cher.okees as well as others. Their laws must govern the transactions which happen within their own borders, and the legal claims which are founded upon them, in whatever court of other nations the satisfaction for an injury sustained maybe demanded. This action is *122 not founded upon their law, but the law of Tennessee, and there is no evidence in this record to show what the Cherokee law is, upon the facts detailed in the evidence given and spread upon this record. Therefore, the verdict and judgment is without foundation.
There is a misjoinder of counts also in the declaration, and that defect may be taken advantage of by demurrer, in arrest of judgment, or by writ of error. Therefore as the first fault in pleading has occurred with the plaintiff in forming his declaration, and the objection being taken, should be allowed, although the defendant did not avail himself of the mistake at as early a period as he might, yet, where the first fault is, there does the law impute blame, and requires reformation, and deems it no mitigation that the defendant has been in fault as well as the plaintiff.
Judgment must be reversed.